## CITY OF MINOT et al. v. AMUNDSON et al.

(133 N. W. 551.)

**Statutes — harmonizing conflicting provisions.**

1. It is the duty of courts to harmonize conflicting statutory provisions as far as possible, to the end that effect may be given to the legislative intent.

**Tax statute —construction — conflicting provisions.**

2. On consideration of the whole law providing a revenue system for this state, and particularly with reference to the apparent conflict between the provisions of § 1553, Rev. Codes 1905, that the board of county commissioners may, upon affidavit or other evidence, when satisfied beyond doubt as to the illegality or unjustness of the assessment, or in case of error, abate a tax, whether real or personal, and of § 2722, Rev. Codes 1905, among other things, permitting the board of county equalization to increase or diminish the valuation placed by inferior boards of equalization on any class of property, so as to make such valuation uniform with the valuation of the same class of property throughout such county, but prohibiting such board from otherwise changing any individual assessment; and in the light of First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836, it is *held* that the county commissioners, sitting as a board of county commissioners, have no power to reduce individual assessments or abate individual taxes, except in certain instances, not necessary to mention here.

**Tax statute — construction — reading several sections together.**

3. When §§ 1553 and 2722, Rev. Codes 1905, are read together, the provision in the first-mentioned section, appearing to permit the board of county commissioners to abate taxes, applies only to exceptional cases, and particularly those mentioned in § 2722, where boards of equalization fail to hold meetings.

Opinion filed November 8, 1911.

Appeal from District Court, Ward county; *Leighton,* J.

Action by the City of Minot and others against Arne Amundson and others, as the Board of County Commissioners of Ward County, and others. From a judgment sustaining a demurrer to the complaint, plaintiff appeals.

Reversed.

*George A. McGee,* for appellants.

*Dudley L. Nash,* for respondents.

SPALDING, Ch. J. The sole question on this appeal is the legality of the board of county commissioners of Ward county, as county commissioners, in reducing the assessment for the year 1909 on lots 13, 14, and 15, in block 4, in the city of Minot, from $5,460 to $3,000, and as a result abating the taxes levied on such real estate in the same proportion. This was done in February, 1911, on petition of the owner to the board of county commissioners, based upon his affidavit to the effect

that the assessment of such property was too high, and out of proportion to other property of the same class in the city of Minot.

The board of county commissioners and other defendants demurred to the complaint of the city and certain taxpayers, through which a judgment was sought to nullify and avoid the action of the commissioners, and to enjoin the county treasurer from crediting the taxes on any valuations reduced by the board, upon the grounds stated. The demurrer was general, and raises the question of the power of the board of county commissioners, acting as such, and after its adjournment as a board of equalization, to reduce the valuations and abate the taxes on property in a city.

The difficulties arising in the determination of the question involved in this case spring from the apparent conflict between the provisions of § 1553, Rev. Codes 1905, and § 2722, Rev. Codes 1905.

Section 1553 reads as follows: "The board of county commissioners may, upon affidavit or other evidence, when satisfied beyond a doubt as to the illegality or unjustness of the assessment, or in case of error, abate taxes whether real or personal. Full record of such abatement must be made, showing the reason for their action, and the county auditor shall certify such abatement to the county treasurer, who shall enter such facts opposite the tax so abated, which shall have the effect of discharging such tax. And whenever taxes on any real estate remain unpaid and such property has not been sold to any purchaser other than the county, by reason of depreciation in value or other cause, the board of county commissioners may compromise with the owner of such property by abating a portion of such delinquent taxes on payment of the remainder. The county auditor shall also make out a certified statement of the amount of state taxes so abated, which statement shall be forwarded to the state auditor, who shall give the county credit for the amount so abated."

Section 2722 is in the following language: "Within ten days after the completion of the equalization of the assessment as herein provided, the city auditor shall deliver the same to the county auditor of the county in which such city is situated, with his certificate that the same is correct as equalized by said board of equalization, and the same shall be accepted by the board of county commissioners of such county in lieu of all other assessment rolls for said property in said city, and the

board of equalization of such county may increase or diminish the valuation therein placed on any class of property, so as to make such valuation uniform with the valuation of the same class of property throughout such county, but no individual assessment shall be otherwise changed; and a failure of any county or city board of equalization to hold its meetings shall not vitiate or invalidate any assessment or tax except as to the excess of valuation, or tax thereon, shown to have been unjustly made or levied."

This court, in First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836, held that, except as to assessments in unorganized districts or townships, the county board of equalization had no power to change individual assessments, except as a change in the assessment of different kinds of property by class would effect such a change; and that the law regarding equalization by boards of equalization provided a harmonious scheme, to wit, that the township, village, or city board of equalization equalizes as between individuals, the county boards equalize as between classes of property, and the state board equalizes as between counties; and certain sections of the Code were therein passed upon. But this did not determine the powers of the board of county commissioners when not acting as a board of equalization.

In accordance with elementary law, and as held in First Nat. Bank v. Lewis, supra, it is the duty of this court to harmonize conflicting statutory provisions as far as possible, so as to give effect to the legislative intent. We see but one way in which the principle can be applied to the two sections in question.

Section 1553 is found in the chapter of the Code relating to revenue and taxation, and on its face permits the board of county commissioners to abate real or personal taxes illegally, unjustly, or erroneously assessed. Section 2722 is a part of the chapter relating to cities, but contains a prohibition against the county commissioners changing any individual assessment, other than as such a change may be effected by equalizing classes throughout the county, and requires the board of county commissioners to accept the assessment as equalized by the city board. These provisions as indicated appear to be in direct conflict; but § 2722 contains a further condition, to wit, that a failure of any county or city board of equalization to hold its meetings shall not vitiate or invalidate any assessment or tax, "except as to the excessive

valuation or tax thereon shown to have been unjustly made or levied."
The language of this last-quoted provision fits directly into the language
of § 1553, supra, and, although the legislative intent is not clear, in view
of all the provisions on the subject, we consider it reasonably certain
that the intent can be gathered from a combination of these two provi-
sions.   They must be read together, and when so read it would appear
that a taxpayer or person whose property has been assessed, can be
protected, on the failure of a city board of equalization to hold its meet-
ings, by making the affidavit, or producing the other evidence men-
tioned in § 1553, necessary to satisfy the board of county commission-
ers beyond a doubt that his assessment is illegal, unjust, or erroneous;
and that thereupon the board of county commissioners may abate the
taxes, or such part thereof as is based upon an illegal, unjust, or errone-
ous assessment.

In like manner, where the board of county commissioners sits as
a board of review to equalize assessments in unorganized districts or
townships, and fails to meet in that capacity, we think this statute was
intended to furnish protection for the aggrieved property owner, and
save the whole levy from failure.   While this construction may be
somewhat far-fetched, yet a consideration of still other provisions of the
Code seems to support our view.   Section 2721, among other things,
prohibits the city council from recommending to the board of county
commissioners any change or alteration of any assessment or assess-
ments, or otherwise, and makes provision for the appearance of ag-
grieved parties before the city board of equalization, in person or by
attorney, for the purpose of having errors and irregularities in assess-
ments corrected.

Other sections provide for notice to property owners of changes in
assessment.   Section 1552 places the duty upon the county auditor to
correct errors in names of persons assessed or taxed, and to enter upon
the assessment roll and assess the value of property omitted therefrom.
And § 1529 provides for the chairmen of the boards of township super-
visors, presidents of city councils, and of the boards of trustees of towns
and villages, attending the meeting of the county boards of equalization,
and makes it their duty to advise such board in regard to the equaliza-
tion of the assessment for such county, and the amount of taxes to be
levied.

If § 1553 is to be read literally, each taxpayer of a city may, subsequent to the meeting of the city board of equalization, and after the adjournment of the county board of equalization (in this case nearly two years thereafter), appear before the county commissioners, and secure a reduction of his assessment and an abatement, in whole or in part, of his taxes, without any representation by the city, which is an interested party, and thereby decrease the assessed valuation of the city from above to below the debt limit; and the action of the county commissioners in reducing or abating such assessment and taxes might result in a serious deficiency in the revenues of the city, rendering appropriations excessive, and otherwise interfering with the administration of municipal affairs, leaving the city no means of protection.

When the board of county commissioners meets as a board of equalization, it is done with notice to all interested. City officials are presumed to be present in the interest of their constituency, and there is at least opportunity for the board to hear both sides on any question of reduction; but if it is precluded from doing this as to individual property owners, as held in First Nat. Bank v. Lewis, supra, much less can it be presumed, without the plainest and most conclusive provisions, that the legislative intent was to provide for action of this kind by the board when sitting as county commissioners.

The rights of injured parties are adequately protected by a subsequent provision, found in § 1553, permitting the county commissioners, after a sale of real property to the county, to compromise with the owner of such property by abating a portion of delinquent taxes on his paying the remainder, when certain facts are disclosed, and by the right of the property owner to maintain appropriate legal proceedings.

The act of the county commissioners in reducing the assessment of the respondent, because alleged by the petitioner to be out of proportion to the other property of the same class in the city, is an act of equalization; and if it can be done in this case we see no reason why the board of county commissioners may not, when sitting as a board, wholly ignore all of its equalization proceedings, as well as the proceedings of the city council, sitting as a city board of equalization. In such case there would be no limitation on the action of the commissioners. Taxation would be a matter of uncertainty until the payment of the tax. No

municipality could rely upon the finality of the action of the boards of equalization, and the whole subject would be thrown into chaos. But if, on the contrary, the legislature has provided a complete system, and the provisions referred to only furnish methods applicable to exceptional cases, as where one or another of the boards has failed to perform its function, then our construction of these sections is in harmony with such system, and the rights of all concerned are subject to protection as nearly as may be in any such revenue system.

These conclusions result in reversing the order of the District Court, which sustained the demurrer to the complaint of the appellant.