STATE OF NORTH DAKOTA EX REL. WILLIAM LANGER,
Attorney General and Minnie J. Neilson, Relator, Plaintiffs and
Appellants, v. GEORGE A. TOTTEN, Robert Muir, P. M.
Casey, John N. Hagen, Commissioner of Agriculture and Labor,
and Ex Officio Member of the Board of Administration, Minnie
J. Neilson, State Superintendent of Public Instruction, and Ex
Officio Member of the Board of Administration, Members of the
Board of Administration of the State of North Dakota; and A. P.
Hollis, P. S. Berg, L. M. Rockne, W. J. Bell and Minnie J. Neil-
son, State Superintendent of Public Instruction, and Ex Officio
Chairman of the Educational Commission of the State of North
Dakota, and as Such Members of the Educational Commission of
the State of North Dakota, Defendants and Respondents.

(175 N. W. 563.)

**Schools and school districts — constitutional power of legislature to pre-
scribe courses of study.**

1. The legislature, pursuant to constitutional authority and excepting as
restricted by constitutional limitations, possesses the power to regulate the
educational system and public schools of this state and to prescribe the courses
of study in such schools.

**Schools and school districts — validity of the board of administration to
act as to courses of study.**

2. The Board of Administration Act, known as S. B. No. 134, enacted by the
legislature in 1919, and referred to and adopted by the people of the state,
so far as the same grants the specific power to the board of administration to
supervise and control the preparation of the courses of study in the common
schools of the state, is not unconstitutional upon the ground that it inter-
feres with and takes from the superintendent of public instruction prerogatives
possessed as a constitutional officer.

**Schools and school districts — power of superintendent of public instruction
to prepare courses of study.**

3. The superintendent of public instruction has no constitutional power or

NOTE.—For authorities discussing the question of power of legislature to pre-
scribe subjects to be taught in public schools, see note in 47 L.R.A.(N.S.) 200.

On validity of statute or other regulations as to the use, or teaching, of foreign
languages in schools, see note in 7 A.L.R. 1695.

inherent right to prescribe and prepare the courses of study for the common schools of the state. This right, pursuant to direct constitutional provision, has been granted to the legislature. Ex parte Corliss distinguished and held not in point.

### Statutes — construction to comply with legislative intent.

4. In applying legal rules of statutory construction the object intended to be accomplished should be considered; in considering conflicting statutory provisions the main object to be kept in view is the ascertainment of the legislative intent; this legislative intent may be determined from a general consideration of the whole act, with the established policy of the legislature as disclosed by the general course of legislation.

### Schools and school districts — construction of statute granting specific power with general reservation.

5. In connection with the application of such rules of statutory construction, where a specific power has been granted, in a statute to a board of administration with which a general reservation therein concerning the duties and powers of the superintendent of public instruction is inconsistent, the specific power so granted will prevail over the general reservation stated.

### Schools and school districts — power of superintendent of public instruction to prescribe courses of study.

6. In 1919, pursuant to Senate Bill No. 134, the legislative assembly enacted the board of administration bill wherein there is specifically granted to such board the power to have charge and supervision of the preparation of courses of study for the several classes of public schools; however, in section nine thereof, it is provided that the powers and duties of the superintendent of public instruction shall be subject to the supervision and control of such board only in so far as such powers and duties were by law subject to the supervision and control of the state board of education and other boards to whose powers such board of administration succeeded. Upon an original application by the superintendent of public instruction to compel such board to refrain from investigating, preparing, and prescribing courses of study for the common schools of the state, the same being a power and duty theretofore possessed by such superintendent, it is held, upon legal construction of the intent and purpose of the act in regard to the preparation and prescription of the course of study for the common schools of the state, that the superintendent of public instruction possesses the power and duty to prepare and prescribe courses of study for the common schools of the state subject to the power of supervision and control by such board of administration pursuant to the specific power therefore granted in the act.

Opinion filed October 20, 1919.

Original application for prohibition and injunction against the State Board of Administration by the Attorney General, and the Superintendent of Public Instruction.

Writ denied.

*Geo. E. Wallace,* and *Joseph Coghlan,* for respondents.

*William Langer,* Attorney General, and *E. B. Cox,* Assistant Attorney General, for relators.

BRONSON, J. This is an original application to this court to compel the board of administration and the educational commission to refrain from preparing and prescribing the courses of study for the common schools of the state. The respondents filed a return setting up that the board of administration possessed the authority so to prepare courses of study pursuant to, the provisions of Senate Bill No. 134, enacted by the legislative assembly of 1919, and of the authority of the educational commission to proceed so to do under the direction of the board of administration. The relators contend that such act of the legislature does not grant, and was not intended to grant, power to the board of administration to prescribe the courses of study in the common schools of the state, and that if it should be so construed, such act is unconstitutional for the reason that it interferes with the prerogatives of the state superintendent of public instruction, a constitutional officer elected by the people. These are the only two questions presented upon the application.

In order to consider the questions propounded it is deemed proper to review in a summary way the legislative acts since statehood concerning regulation of the educational system, the public schools of the state and the duties of the superintendent of public instruction in connection therewith. The Constitution provides for the election of a superintendent of public instruction. Const. § 82. It further provides that the power and duties of such superintendent shall be as prescribed by law. Const. § 83.

The Constitution further provides that the legislative assembly shall make provision for the establishment and maintenance of a system of public schools (Const. § 147), and shall take such other steps as may be necessary to secure a reasonable degree of uniformity in

courses of study (Section 151, Const.). At the first session of the legislative assembly, after the adoption of the Constitution, chap. 63, Laws 1890, conferred upon the superintendent of public instruction all the powers and duties theretofore possessed by the territorial board of education. In the territory of Dakota prior to the adoption of the Constitution a territorial board of education, of which the territory superintendent of public instruction was a member and the president thereof, possessed the general supervision and control of public instruction in the territory of Dakota. Dak. Comp. Laws 1887, § 1688. This board possessed poyer to prescribe a course of study for the public schools of the territory including the high schools and for the territorial normal schools. At the same session of the legislature in 1890, an act was passed providing for a uniform system of public schools in the new state. The superintendent of public instruction was granted the general supervision of the public schools of the state. He was made ex officio a member of the normal school board of the state. He was granted powers to prepare and prescribe a course of study for all the public schools of the state, normal schools of the state and the course of study, training, and practice of the professional departments of schools designated and supported, wholly or in part, by the state. Laws 1890, §§ 3, 6, chap. 62. Likewise, at the same session the normal school at Mayville and Valley City were established, and a board of directors thereof created possessing, among other things, the powers to prepare a full course of study in such normal schools. Laws 1890, chaps. 162, 163.

In 1890 the legislature established the Academy of Science at Wahpeton, and made the superintendent of public instruction ex officio a member of the board of education in charge thereof; to this board there was granted the general supervision of the academy, including the right to provide the various books to be used in instruction.

At the legislative session of 1891 a normal school was established at Valley City, as well as at Mayville and a board of directors provided for each, of which the state superintendent of public instruction was made ex officio a member, and the president thereof. The act provided that the faculty of said normal school should carry out the course of study adopted by the board of directors, chap. 89, Laws 1891.

In 1895 the legislature created a high school board consisting of the governor, the superintendent of public instruction, and the president of the university, and gave to it power to classify schools as state high schools, and authority to establish necessary and suitable rules and regulations relating to examinations and courses of study. Laws 1895, chap. 53. At the same session of the legislature a specific act was enacted requiring every teacher to teach pupils a certain course of study in the schools, naming the particular subjects, including specifically instruction concerning the nature of alcoholic drinks, narcotics, stimulants, physiology, and hygiene. Laws 1895, chap. 56.

In 1897, pursuant to chap. 89, Laws 1897, the industrial school and school for manual training was established at Ellendale; upon the board of trustees the superintendent of public instruction was a member thereof.

In 1903, pursuant to chap. 83, Laws 1903, the superintendent of public instruction was granted authority concerning the examination and grading of teachers.

In 1905, pursuant to chap. 103, Laws 1905, the legislature again prescribed courses of study to be taught in the common schools, mentioning specific subjects.

In 1907, the legislature established the state library commission and made the superintendent of public instruction, ex officio a member. Laws 1907, chap. 243.

In 1909, the Legislature again prescribed a list of subjects to be taught in the common schools covering some fourteen subjects. Laws 1909, chap. 204. At the same session of the legislature it was also enacted that the president of the state normal school with the superintendent of public instruction should provide and arrange a course of study for the state normal schools of not less than ten and one half months extant, for students who have completed the eighth grade in the common and rural schools of the state, and in the cities, towns, and villages, and for such persons who may have been previously granted a certificate to teach. It provided also for certain subjects that must be included in the course of study. Laws 1909, chap. 100. Likewise, at such session of the legislature a commission to codify the school laws of the state was designated, of which the superintendent of pub-

44 N. D.—36.

lic instruction was made ex officio a member thereof. Laws 1909, chap. 105. This commission consisting of the attorney general, Mr. Taylor, then deputy superintendent of public instruction, subsequently superintendent of public instruction, and three others, one, Prof. Kennedy, from the State University, another, Prof. Weeks, from the State Agricultural College, and Prof. Black from the School of Science, submitted to the legislature of 1911 a codification act. It was enacted into law and known as chap. 266, Laws 1911. By the act the superintendent of public instruction was made ex officio a member of the normal school board of the state. In this act his powers to prepare and prescribe courses of study were limited to the common schools of the state. It also created a state board of examiners of which the superintendent of public instruction was made secretary, whose duties it was to prepare questions for the examinations of teachers and to prescribe rules and regulations with respect thereto, and issue certificates to teach in the state.

Likewise, the act created a state agricultural and training school board of which the superintendent of public instruction was a member thereof, upon whom the duty was imposed to prescribe courses of study to be pursued in the county agricultural and training schools and to determine the qualifications of the teachers therein.

In 1913, pursuant to chap. 143, Laws 1913, the state board of education was created of which the superintendent of public instruction was made a member. To this board were granted the duties of the state board of examiners, the state high school board and the state agricultural and training school board. To it, further, was granted the authority to make rules and regulations for establishing state rural, graded, and consolidated schools, provided by law, and to establish such rules as may be found necessary to secure uniformity and best results among the schools receiving state aid as rural, graded, and consolidated schools. At the same session of the legislature, pursuant to chap. 257, Laws 1913, the superintendent of public instruction was made ex officio, a member of the board of trustees of the teachers' insurance and retirement fund.

In 1915 the legislative assembly established the state board of regents. Laws 1915, chap. 237. This board was granted general con-

trol and administration over the University, Agricultural College, School of Science, State Normal Schools, the Normal and Industrial School and the School of Forrestry. To this board were granted the powers formerly possessed by the directing boards of such respective institutions. It was granted specific authority to make all necessary rules and regulations for the efficient management and control of the educational institutions and of their various departments. The superintendent of public instruction was not made, ex officio, or otherwise, a member of such board of regents.

Finally at the last session of the legislature, in 1919 the act now in question, known as Senate Bill No. 134, termed the Board of Administration Bill was enacted.

In § 1 thereof it is stated that such board is created for the general supervision and administration of all state penal, charitable, and educational institutions of the state and the general supervision of the public and common schools of the state. Further, in § 1 thereof, it is provided that, in the exercise of these duties of general supervision, the superintendent of public instruction and the presidents or heads of the several state institutions shall be responsible to the board. Furthermore, the superintendent of public instruction is made ex officio a member of such board.

In § 5 thereof it is provided that such board shall assume all the powers and perform all the duties of the state board of education, state board of regents, and the state board of control as now exercised by any and all of such boards.

In § 6 thereof it is provided that such board shall make all necessary rules and regulations for the general supervision of the public schools of the state, that furthermore, such board shall have the power to appoint a school commission of which the superintendent of public instruction shall be a member to investigate the kinds and costs of library books, textbooks, for use in public schools of this state and the question of the uniformity of the textbooks.

In § 7, thereof it is further provided that such board shall appoint an educational commission of which the superintendent of public instruction shall be ex officio a member and chairman of the commission to have charge and supervision of the certification of teachers, standard-

ization of schools, examinations for eighth grade and high school pupils, and preparation of courses of study for the several classes of public schools.

In § 9 thereof it is further provided that the powers and duties of the superintendent of public instruction as heretofore provided by law shall be subject to the supervision and control of the board of administration, only in so far as such powers and duties were by law subject to the supervision and control of the state board of education, the state board of regents, and the state board of control.

This board of administration was referred to the electors of the state under the referendum amendment to the Constitution and was ratified by a majority of the votes of the people at an election held in June, 1919.

A review of this legislation readily discloses that the legislature, since statehood, have assumed both the right and the duty under the constitutional provisions to regulate the system of education in this state and of public schools existing for such purpose even to the extent of prescribing courses of study in the common schools of the state and in that regard to add to or take away from the duties of the superintendent of public instruction. Apparently, no one has ever questioned the right of the legislature to so exercise this power of regulation. There is in fact, no doubt that it possesses this power not only by reason of no restrictive provision inhibiting the exercise of such power in the Constitution but by direct mandate so to do therein. There is furthermore, no question that this power of the legislature extends to the right to prescribe courses of study or subjects to be taught in the public schools. See note in 47 L.R.A.(N.S.) 200.

The relators contend, however, that the legislative attempt by statute to regulate or supervise the courses of study in the common schools of the state is unconstitutional for the reason that it takes away from the superintendent of public instruction a power and a duty theretofore imposed and always exercised by such superintendent since statehood and thereby deprives a constitutional officer of a power that is inherent in the office. In support of such contention relators rely upon Ex parte Corliss, 16 N. D. 470, 114 N. W. 962. It is evident that this contention is without merit and that the case cited is not in point.

In that case the constitutional question involved the right of the legislature to transfer from the state's attorney to an enforcement commissioner by legislative act duties that inhered in the office. With reference to the state's attorney, the Constitution simply provides for an election of such state's attorney, but makes no provision for further prescribing his duties by statute. In the present matter the Constitution specifically authorizes the legislature to prescribe the duties of the superintendent of public instruction as well as granting the power to regulate and supervise the educational system of the schools of the state. In fact, as heretofore shown in the review of the legislative acts, the power of the superintendent of public instruction to prescribe courses of study in the common schools arose by statutory provisions in 1890. If the contention of the relator in this regard is sound then, upon analogous reasoning, the legislative acts which specifically prescribe certain courses of study to be pursued in the common schools and the acts which took from the superintendent of public instruction the powers and duties theretofore possessed concerning courses of study in the high schools and higher institutions of learning in this state are, likewise, unconstitutional. Furthermore, it is to be noted that the right to prepare and prescribe courses of study for the common schools of the state is not a right inherent in the office of the superintendent of public instruction, but is a right inherent in legislative action and so specifically granted by the Constitution. We have no hesitancy in stating that the legislature of this state possesses the power to regulate or supervise the course of study in the common schools of this state, and that such feature of the act is not unconstitutional upon the ground asserted by the relators herein.

The next question concerning the power of the board of administration pursuant to the legislative act, to supervise the courses of study in the common schools of the state presents a question of statutory construction. Pursuant to the provisions of Senate Bill No. 134, in question, it is clear that the legislature has granted the specific power in § 7 thereof to have charge and supervision over the preparation of courses of study for the several classes of public schools which includes common schools. The relators do not contend that such specific power is not in terms so granted, but they assert that under the provision of·

§ 9 of such act there is a particular exception made that such board of administration shall not have supervision and control over the powers and duties of such superintendent excepting as they were by law subject to the supervision and control of former state educational boards. Under the terms of said § 9 it is clear that there is such general reservation of freedom from the exercise of supervision and control by the board of administration. In this regard it will be noted that such superintendent of public instruction still possesses the power to prescribe and prepare courses of study for the common schools of the state pursuant to statutory provisions existing therefor, excepting that if such board of administration has the specific power named, the duty of such superintendent, in that regard, is subject to its supervision and control. It is also clear that if such board possesses such power, pursuant to the legislative act, it must act upon and in connection with a duty formerly exercised by the superintendent alone. The contention of the relators that this power of supervision and control concerning the preparation of courses of study in the common schools would take from such superintendent such right and duty is unfounded. If such board has such specific right, the superintendent, nevertheless, possesses the same right to prescribe and prepare courses of study for such common schools as, theretofore, except that her power and duty in that regard are subject to the supervision and control of such board of administration. The question therefore presented is whether this specific power of supervising and controlling the preparation of courses of study for the common schools granted in the legislative act is nullified and rendered nugatory by the provision of said § 9 concerning the powers and duties of such superintendent. In this regard it is recognized as elemental in statutory construction that the object intended to be accomplished should be considered; that in considering conflicting provisions the great object to be kept in view is the ascertainment of the legislative intent; that this legislative intent should be determined from a general view of the whole act along with which may be considered the established policy of the legislature as disclosed by the general course of legislation. That furthermore where there is a specific power in the statute granted it is not to be rendered nugatory and of no avail by a subsequent general reservation. 36 Cyc. 1110,

1111, 1128, 1130, 1168; Sutherland, Stat. Constr. §§ 239–246; Minot v. Amundson, 22 N. D. 236, 133 N. W. 551; State ex rel. Langer v. Kositzky, 38 N. D. 616, 166 N. W. 534; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583; Murray Bros. v. Buttles, 32 N. D. 565, 156 N. W. 207; State ex rel. Erickson v. Burr, 16 N. D. 581, 113 N. W. 705; State ex rel. Flaherty v. Hanson, 16 N. D. 347, 113 N. W. 371; Sanford v. King, 19 S. D. 334, 103 N. W. 30.

Upon the application of these principles of statutory construction, this court has no hesitancy in arriving at the conclusion that there exists a direct legislative intent to grant to the board of administration the specific power as stated in the statute to supervise and control the courses of study in the common schools of the state and that this legislative intent is further revealed by the purpose and object of the act sought to be accomplished and by the general policy of the legislature as revealed in the course of legislation. It is therefore held that Senate Bill No. 134 granting to such board of administration the authority to supervise and control the preparation of courses of study in the common schools of this state is a valid legislative act as against the contentions of the relators and that in such respect the superintendent of public instruction possessed the power and the duty to prepare and prescribe courses of study in the common schools of this state subject to the supervision and control of the board of administration and the educational commission of which such superintendent is a member thereof.

It is ordered that the writ be in all things denied and the cause dismissed.

ROBINSON, GRACE and BIRDZELL, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). The sole questions presented for determination in this case relate to the validity and construction of chapter 71 (Senate Bill No. 134) Laws 1919. The principal provisions of the law are referred to in the majority opinion; but that opinion wholly ignores the legislative history of the enactment; and it is upon such history that the relator predicates the contention that

the lawmakers did not intend to confer upon the board of administration authority to interfere with the powers formerly possessed by the superintendent of public instruction regarding courses of study in the common schools of the state.

Chapter 71, Laws 1919, was introduced in the senate on February 1, 1919. After having been read the first and second time it was referred to the committee on state affairs. Senate Journal, p. 175. It remained with that committee until February 21, 1919, when it was reported back with certain amendments. Senate Journal, p. 527. On February 24, 1919, it was re-referred to the same committee. Senate Journal, p. 566. On February 26, 1919, it was reported back by the committee with amendments; and on the day following it was passed by the senate in its present form. Senate Journal, pp. 667, 668.

On February 7, 1919, there was also referred to the senate committee on state affairs House Bill No. 81, relating to the examination and certification of teachers. Senate Journal, p. 263. That bill remained in the hands of the committee until February 28, 1919, when it was recommended for indefinite postponement. Senate Journal, p. 718. The senate journal discloses that while these bills were in the hands of the committee petitions and protests were presented to the senate against any curtailment of the powers and duties of the superintendent of public instruction. Senate Journal, pp. 178, 278, 303, 331, 383 and 562.

Chapter 71, Laws 1919, as introduced contained no provision reserving any powers to the superintendent of public instruction from those which the bill purported to grant to the board of administration. But the senate committee on state affairs amended the bill by inserting therein § 9, which reads as follows: "The powers and duties of the state superintendent of public instruction as heretofore provided by law shall be subject to the supervision and control of the board of administration, only in so far, as such powers and duties were by law subject to the supervision and control of any or all of the boards mentioned in § 5 of this act." The boards referred to in § 5 of the act are the state board of education, state board of regents, and the state board of control. The duties of the first two boards have been mentioned in the majority opinion. The state board of control was in control of the

insane asylum, penitentiary, reform school, blind asylum, school for deaf and dumb, school for feeble minded, and the tuberculosis sanitarium, and had nothing whatever to do with any of the public schools of the state. It is undisputed that none of the boards so enumerated had any authority to supervise or in any manner interfere with the powers of the superintendent of public instruction as regards the course of study in the common schools of the state.

It is also undisputed that the superintendent of public instruction, during the entire history of the state, has been invested with power to prepare and prescribe the course of study in the common schools of the state. This power was conferred by the first legislative assembly. Laws 1890, chap. 62, § 6. And in spite of the many changes made in the school laws of the state—some of which are referred to in the majority opinion—the legislature has consistently adhered to the policy then adopted. And by the statutes in force at the time chapter 71, Laws 1919, was introduced and adopted it was made the duty of the superintendent of public instruction, and he had the power, "to prepare and prescribe a course of study for all the common schools of the state." Comp. Laws 1913, § 1109. Not only was that statute in force then, but it is in force now. Even the majority opinion conceded that § 1109, Comp. Laws 1913, has not been repealed by chapter 71, Laws 1919.

Chapter 71, was submitted to the people at a referendum election held June 26, 1919. Both the notices of election and the ballot contained a synopsis of the contents of the various measures submitted. And the notices of election and the ballot contained this statement relative to Senate Bill No. 134: "Powers and duties of the superintendent of public instruction shall not be abridged. See § 9, of the law." Section 9 was the only section in the act to which specific attention was called either in the notices of election or by the ballot.

It is true as stated in the majority opinion that the great object in construing statutes is to ascertain the legislative intent. In fact it is the sole object, for the intent of the lawmakers is the law. Where the language of the statute is plain, certain, and unambiguous there is no room for construction. The province of construction lies wholly within the domain of ambiguity and uncertainty. In construing statutes the courts are to be guided by certain rules which wisdom and ex-

perience have sanctioned. The Paulina v. United States, 7 Cranch, 52, 60, 3 L. ed. 266, 268; Cary v. Curtis, 3 How. 236, 239, 11 L. ed. 576, 578. The purpose of all rules is to aid in ascertaining the legislative intent and meaning. In cases of conflict or ambiguity, and where, after a consideration of the language of the entire statute, there remains doubt as to its meaning, resort may be had to extrinsic aids. The history of the passage of the law may be considered. The reports of committees, the introduction of amendments, petitions presented, testimony given before legislative committees, and the opposition made to the passage of a statute have all been considered by the United States Supreme Court as legitimate aids to statutory construction. Church of the Holy Trinity v. United States, 143 U. S. 457, 36 L. ed. 226, 12 Sup. Ct. Rep. 511; Blake v. National City Bank, 23 Wall. 307, 23 L. ed. 119; Lincoln v. United States, 202 U. S. 484, 50 L. ed. 1117, 26 Sup. Ct. Rep. 728. See also 36 Cyc. 1136, 1138.

The question in this case is which of two conflicting provisions in the same statute expresses the legislative intent. The rule of construction applicable in such case is stated by the American & English Encyclopædia of Law thus: "Where there is a conflict between two parts of a single act, the rule is that the latest in position will be declared to be the law, as containing the latest expression of the legislative will." 26 Am. & Eng. Enc. Law, p. 734.

Cyc. says: "In the consideration of conflicting provisions in a statute, the great object to be kept in view is to ascertain the legislative intent, and all particular rules for the construction of such provisions must be regarded as subservient to this end. In accordance with the well-settled principle that the last expression of the legislative will is the law, in case of conflicting provisions in the same statute, or in different statutes, the last enacted in point of time prevails; and on the same principle if both were enacted at the same time, the last in order of arrangement controls. As a corollary to this latter rule, a proviso in an act repugnant to the purview thereof is not void, but stands as the last expression of the legislative will." 36 Cyc. 1130. See also 11 Enc. U. S. Sup. Ct. Rep. 130; Lewis's Sutherland, Stat. Constr. 2d ed. § 280.

Section 9 was not only the last in order of arrangement, but the last

in point of time. It was formulated and inserted after the bill had been introduced. Why was it inserted? What evil in the original bill was it intended to remedy? What object did the men, who insisted upon and procured the amendment, have in mind? These questions naturally suggest themselves, and it seems to me are fully answered by the language of § 9 and the history of the passage of the law. Certainly § 9 was inserted for some purpose. The legislators did not insert it merely to increase the number of words in the law. The language of the section is plain and unequivocal. It must have been inserted to accomplish the purpose which its language indicates. The primary purpose of Senate Bill No. 134 was to create the board of administration; to abolish the board of regents, the board of control, and the board of education, and to confer upon the new board the powers possessed by the boards to be abolished. Opposition was made to the bill on the ground that it would deprive the superintendent of public instruction of powers which had been and were then being exercised by that official under the then existing laws. The senate thereupon amended the bill, and obviated the objection, by inserting the specific provision that the board of administration should have no further right of supervision and control over the powers and duties of the superintendent of public instruction, than that which had been possessed by the three boards which it succeeded. These facts are clearly established by the language of the law, and the history of its enactment.

It seems clear that in so far as there is any conflict between § 9, and the prior provisions of the bill, § 9 is expressive of the legislative intent. That was the construction placed upon the law by the officials whose duty it was to prepare election notices and ballots for the referendum election. And every elector who voted to approve or reject the law expressed his choice upon a ballot which informed him, positively and unequivocally, that Senate Bill No. 134, did not abridge any of the "powers and duties of the superintendent of public instruction;" and in confirmation of that statement his attention was directed to § 9 of the law. That section was the only one in the entire act which was specifically called to the attention of the electors. Hence, it appears that not only the legislators who enacted, but the people who

approved, Senate Bill No. 134, must have intended § 9 to be controlling upon the matters covered thereby. Any prior provision in the act in irreconcilable conflict therewith should therefore be deemed nugatory.