[File No. 7149]

ROSE MARIE HOELLINGER, Appellant, v. RONALD MOL-
ZHON and John James Walsh, and John W. Hogan et al.,
Respondents.

(41 NW2d 217)

Opinion filed February 3, 1950

*Paul Campbell,* for Appellant.
*R. E. Swenseid,* for Appellees, Stanley, N. Dak.

GRIMSON, J. On August 23, 1937, Rose Katherine Hoellinger executed her Last Will and Testament. She died October 11, 1946. After a hearing upon citation to the heirs, devisees and legatees the will was admitted to probate. The estate was duly administered and the final decree of distribution was issued.

The Will, after directing the payment of debts, gave to Mrs. Hoellinger's adopted daughter, Blanche Margaret Hoellinger, otherwise known as Rose Marie Hoellinger, this appellant, one-half of all her estate. It then provided: "I give and bequeath to my brothers and sisters, namely, John, Ike, Albert and Anthony Molzhon and Mrs. James O'Omeara, Mrs. Agnes Payson and Mrs. James Walsh the remaining one-half of all property of which I die seized real, personal and mixed and wheresoever situated," subject to a bequest of $500.00 per year for four years to her grand-daughter, Esther Rose Knutson, for educational purposes.

The evidence shows that the brother of the testatrix, John Molzhon and his sister, Mrs. James Walsh, died after the making of the will but before the death of the testatrix. They left no children of their own but John had adopted a son, Ronald Molzhon, and Mrs. Walsh had adopted a son, John James Walsh.

By the final decree one-half of the estate was awarded to Rose Marie Hoellinger, the appellant. Out of the remaining one-half the $2000.00 bequest to Esther Rose Knutson, grand-daughter, was paid. The balance was distributed, one-eighth each to the six brothers and sisters living and to Ronald Molzhon and John James Walsh, as the lineal descendants of John Molzhon and Mrs. James Walsh, the brother and sister of the testatrix who were mentioned in the will but had predeceased the testatrix.

From that decree an appeal was taken to the District Court on questions of law alone, Sec 30–2608 NDRC 1943, and restricted to "the payment and distribution to and awarding to respondents, Josephine O'Omeara, Ronald Molzhon and John James Walsh and to each of them a one-eighth share of the estate in the sum and amount of $4365.75." The district court affirmed the final decree as made by the county court. An appeal is taken to this court from "that part and portion of said judgment wherein and insofar as the same affirms said decree,

adjudging and decreeing that the above named appellees, Ronald Molzhon and John James Walsh are entitled to share in said estate and assigning to and vesting in said Ronald Molzhon and John James Walsh any part or portion of said estate and directs and orders that John W. Hogan, Executor, pay and deliver to them or either of them any part or portion of said estate."

On this appeal the objection to the distribution to Josephine O'Omeara of her one-eighth share is abandoned. Only the distribution to Ronald Molzhon and John James Walsh of the one-eighth share each that would have gone to their adopting parents under the will had they lived is now attacked. The grounds alleged are that Ronald Molzhon and John James Walsh, as adopted children, are not lineal descendants of their adopting parents and, therefore, do not come under the non-lapse statute so as to be entitled to any portion of the estate of Rose Katherine Hoellinger. In support thereof defendants cite Sec 56–0527 NDRC 1943 which provides that if a devisee or legatee predeceases the testatrix testamentary disposition as to him fails unless otherwise provided in the will and Sec 56–0420 NDRC 1943 which provides that if in such case the devisee predeceases the testatrix but leaves lineal descendants, such descendants take in the same manner as the devisee would have.

The decision in this case involves the construction of the latter statute. Specifically the question is whether the term, "lineal descendant" includes adopted children.

The construction of a statute involves first a determination of what was the intention of the legislature in the enactment of the law. Such intent is controlling and must be given effect to the fullest degree. 59 CJ 948.

In determining such intent the meaning of the words used and the language of the statute as a whole must be considered. Other aids in construction of the subject matter are the purpose of the statute, the reason for its enactment, the evils at which the legislation is aimed, the historical background, the construction of similar statutes by other courts, and the consideration of other statutes on related subjects. In this case, that involves a study of not only the non-lapse statute but also the adoption

laws and the statute concerning the interpretation of wills. See 50 Am Jur 271; 59 CJ 948.

The first statute here to be considered is Sec 56–0420, commonly known as the non-lapse statute, reading as follows: "When any estate is devised to any child or other relative of the testator and the devisee dies before the testator leaving lineal descendants, such descendants take the estates so given by the will in the same manner as the devisee would have done had he survived the testator."

The right of inheritance is purely a matter of statutory regulation. The purpose of this statute was to alleviate the hardships caused by the virtual disinheritance of children when a testatmentary disposition failed. "The statute was passed to remedy such disappointments, and should receive a liberal construction so as to advance the remedy and suppress the mischief." Gale v. Keyes, 45 Ohio App 61, 186 NE 755. It has been held that this non-lapse statute should be interpreted to avoid intestacy. Beardsley v. Johnson, 105 Conn 98, 134 Atl 530.

Webster's New International Dictionary, Second Edition, page 1436 gives a definition of "lineal" as "Descended in a direct line; in the line of succession through lineage." That seems to be the general and ordinary meaning of the term as used in the statute.

In 26 CJS 984 it is said that the word descendant "carries the concept of offspring in the line of generation, but, in a particular connection and as the result of legislation it has been held that the word is not limited to blood relationship." See also In re Walter's Estate, 270 NY 201, 200 NE 276. According to these definitions a lineal descendant may be anyone in the line of descent whether by blood or by law.

Appellant has referred to In re Lamb's Estate, 72 ND 42, 4 NW2d 585, where this court held that the ordinary meaning of the noun "descendant" is "lineal issue"—a child of the body. That case involved merely whether grand-children were lineal descendants The only question was whether such blood relationship brought the grand-children within the term "lineal descendants" so as to give them the benefit of the exemptions in the inheritance tax laws. The ordinary meaning of

the noun "descendant" was correctly held to apply. The legislature, however, has said, "The words in a statute are to be understood in their ordinary sense, *except when a contrary intention plainly appears.*" Sec 1–0202 NDRC 1943. In the instant case circumstances indicating a contrary intention do appear. The adoption creates the same rights of heirship in the adopted child as in a child of the body. The ordinary meaning of "lineal descendant" therefore, does not apply here.

In this connection our adoption law must be considered. There were no adoptions at common law. The procedure for adoption is entirely statutory and the relationship created by adoption depends upon the statutory construction. The adoption statutes were for the beneficent purpose of creating an artificial relationship of parent and child in certain cases and creating the right of inheritance in such cases. During the course of our statehood the relationship created by the law of adoptions has been developed as closely as possible into the natural family relationship.

Originally, Sec 2629, Compiled Laws of Dakota 1887, read as follows: "A child when adopted may take the family name of the person adopting after adoption. The two shall sustain to each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation."

In 1891 this section was changed to read as follows: "A child so adopted as aforesaid shall be deemed as respects legal consequences and incidents of the natural relation of parent, the child of such parent or parents by adoption the same as if he had been born to them in lawful wedlock, except that such adoption shall not itself constitute such child the heir of such parent or parents by adoption." Sec 6, Chapter 4 SL 1891, page 84.

This law was again changed in 1895 to read as follows: "That the child so adopted shall be deemed as respects all legal consequences in incidents of the natural relation of parent and child, the child of such parent or parents by adoption the same as if he had been born to them in lawful wedlock." Sec 2805 RC 1895. This is the law as it has remained ever since. Sec 14–1113 NDRC 1943.

It may be contended that the law as first adopted covered

only the relationship between the adopting parent or parents and the adopted child. If so, then the limitation that the relationship should apply only to the parent or parents and the child was removed by the 1891 amendment but a provision was made that the adoption in itself should not make the child an heir of the adopting parent or parents. Finally that limitation also was omitted so that now and ever since 1895 the relationship of parent or parents and child is created by the adoption as against all the world and inheritance by the adopted child from the adopting parent or parents is established as if the child had been born to them in lawful wedlock. It is clear that the legislature intended to place the adopted child as far as possible in the same position as the natural child to all intents and purposes. That also is always the intent of the adopting parents.

This court in Borner v. Larson, 70 ND 313, 293 NW 836, has interpreted the effect of this section as follows: "Under the provisions of Section 4448 of the Compiled Laws (14–1113 NDRC 1943) adopted children, in so far as the 'legal consequences and incidents of the natural relation of parent and child' are concerned, are as much the children of the adopting parent as if they were born to him in lawful wedlock; and these consequences and incidents include the right of inheritance when this is conferred on children."

Clearly this adoption statute as so interpreted places the adopted child in the direct line of inheritance from its adopting parents and as such the adopted child comes within Webster's definition of "lineal"—the statutory line of descent.

Other courts have passed upon this matter. The case of Phillips v. McConica, 59 Ohio 1, 69 Am St Rep 753, is cited by the appellant as authority for the lapsing of a legacy when the legatee had only an adopted child. The Ohio statute on "non-lapse" used the word "issue" instead of "lineal descendants" and the court construed "issue" to mean "child of the body or heir of the body of the deceased relative of the testator and does not include a child adopted by such descendant." The Ohio court, however, has liberalized this decision in Flynn v. Bredbeck, 147

Ohio St Rep 49, 68 NE2d 75, holding that an adopted child is "issue" within the meaning of the anti-lapse statute.

In the case of In Re Buell's Estate, 167 Ore 295, 117 P2d 832, the Oregon Supreme Court analyzes many cases bearing on this subject and comes to the conclusion, that: "The adopted child of a sister of testatrix came within the classification of 'lineal descendant' of adopting mother within meaning of anti-lapse statute, providing that such descendants shall take property devised to any child, grand-child, or other relative of testator when such devisee predeceases testator."

Appellant claims that this holding was virtually overruled in the case of In Re Frazier's Estate, 180 Ore 232, 177 P2d 254. The question in that case, however, was different and did not affect the Buell Estate case at all. The court said of the Buell decision that the conclusion arrived at "was supported by the authorities."

In the case of Warren v. Prescott, 84 Me 483, 17 LRA 436, the court considered the precise question here involved. The adoption statute is just like ours but has some exceptions not involved here. The court says: "The question is whether an adopted child can take a legacy to one of its adopting parents, and thus prevent the legacy from lapsing, when the legatee dies before the testator. There is no doubt that a child born in lawful wedlock can so take, but in this particular, does an adopted child possess the same right? We think so. . . . And when an adopted child takes a legacy given by will to one of his adopting parents, he does not take as an heir at law of the parent's kindred. He does not "inherit" the legacy from the testator. He takes as a lineal descendant of the legatee, by force of the statute, RS c 74, Sec 10. Not as a lineal descendant by birth; but as a statutory lineal descendant; and as lawfully in the line of descent as if he were placed there by birth. It is as competent for the legislature to place a child by adoption in the direct line of descent as for the common law to place a child by birth there. And that is precisely what the legislature has done, and what it undoubtedly intended to do, when in strong and emphatic language, it declared that a legally adopted child becomes to all

intents and purposes the child of the adopters the same as if
he were born to them in lawful wedlock . . . . This conclusion
is, in our judgment, as indisputable as a mathematical demon-
stration."

In Fisher et al v. Gardiner et al, 183 Mich 660, 150 NW
358, it is said: "A child by adoption takes as a lineal descend-
ant of the legatee by force of the statute; not as a lineal descend-
ant by birth, but as the statutory lineal descendant, and as
lawfully in the line of descent as if he were placed there by
birth." Warren v. Prescott, 84 Me 483, 24 Atl 948, 17 LRA 436,
30 Am St Rep 370; Hartwell, Trustee v. Tefft, 19 RI 644, 35 Atl
882, 34 LRA 500; Flannigan v. Howard, 101 Ill App 616; Id
200 Ill 396, 65 NE 782, 59 LRA 664, 93 Am St Rep 201; Ultz
v. Upham, 177 Mich 351, 143 NW 66. See also Tibbets Estate,
48 Cal App2d 177, 119 P2d 368.

The court in the case of In Re Moore's Estate, 7 Cal App2d
722, 47 P2d 533, after reviewing several of the cases bearing on
this matter held an adopted child "A lineal descendant of adopt-
ing father and entitled to participate in legacy left adopting
father who predeceased his brother, the testator." See also
In Re Winchester's Estate, 140 Cal 468, 74 P 10; Emerson et al
v. Peters et al, 110 Kan 87, 202 P 601; Markover v. Krause,
132 Ind 294, 31 NE 1047, 1050; 17 LRA 806; In Re Cook's Estate,
114 App Div NY 718, 79 NE 991; Williams v. Rollins, 271 Mo
150, 195 SW 1009; Bernero v. Goodwin, 267 Mo 434, 184 SW 74.

While there are authorities to the contrary, the better rea-
soned decisions as well as more sound judgment support the
contention of the respondents.

The evident purpose of the non-lapse statute is that a testa-
mentary disposition should not fail. To supplement that stat-
ute the legislature passed adoption laws granting to all children
equal inheritance rights whether they came into the line of
descent by birth or by adoption. Under the non-lapse statute
adopted children take as lineal descendants of their adopting
parents just the same as if they had been born to them in law-
ful wedlock. They take by virtue of the statutes. The testator
is presumed to know the law. If he does not wish the adopted
children, if any there should be, of his devisee to take then he

must make provision to that effect in his will. His intention in that respect must be determined from the will.

In the instant case testatrix not only failed to make any such provision in her will but her intention as shown by the record clearly indicates that she intended the adopted children of her brothers and sisters should take in the same manner as their natural children would. The record shows that both Ronald Molzhon and John James Walsh had been adopted prior to the making of the will; that John James Walsh was adopted April 1, 1929; that the address given of Mrs. John Molzhon was Stanley, North Dakota, not far from Minot, North Dakota, the residence of testatrix. The bequests in the will to her brothers and sisters indicate very friendly family relations. She preferred them over her own granddaughter. The inference from the evidence is that she must have known about these adoptions. It must also be presumed that the testatrix knew that the adoption law made the adopted child, the child of the adopting parents, "the same as if he had been born to them in lawful wedlock." The inference from the will is that the testatrix intended the proceeds of her bounty to go to her brothers and sisters and their heirs alike. In Nutter v. Vickery, 64 Me 490, 498, the court says: "The statute (To prevent lapse) is in furtherance of what may fairly be presumed to have been the intention of the testator, and in order to effect its object it should be construed liberally."

It must be held, that Ronald Molzhon and John James Walsh are "lineal descendants" of John Molzhon and Mrs. James Walsh as that term is used in the non-lapse statute.

The evidence in this case shows that the real estate constituted less than one-half of the estate. The appellant contends that even if this court construes the term "lineal descendant" in Sec 56-0420 to include Ronald Molzhon and John James Walsh, adopted children, they can still take only that portion of their share which is real property because Section 56-0420 used only the words "devised" and "devisee" in connection with the property that is to pass to the lineal descendants.

That necessitates an interpretation of the meaning of the words "devise" and "devisee" as used in that section.

In its technical sense the word "devise" is generally applied to the testamentary disposition of real property while the word "bequest" is applied to the testamentary disposition of personal property. However, Webster's New International Dictionary, 2nd Ed Page 255, under the definition of "bequest" has this to say: "It has often been decided in modern legal cases that in gifts by will bequeath and bequest are the more appropriate words for use in making a gift of personalty and devise the more appropriate word for a gift of realty. This distinction, however, is modern and not everywhere observed; and in any case bequeath will operate to convey realty and devise to convey personalty where this is shown to be the intent with which the words were used. There is, moreover, no reason for such a distinction in the history of the words. Both were originally used without distinction to give either personalty or realty, bequeath and bequest being the earlier English words, in addition to which devise, v. came into use from the French toward the end of the 14th. century, apparently, and devise, n. in the 16th. century, with the same meanings as bequeath and bequest. Subsequent attempts to discriminate between them have caused the modern efforts to restrict the one to personalty and the other to realty."

In support of her contention appellant cites, In Re Fratt's Estate, 60 Mont 526, 199 P 711, where it is held that only real property is prevented from lapsing under that statute. Also In Re Ross Estate, 140 Cal 282, 73 P 976, where it is held that a similar statute "applies solely to devises as distinguished from bequests." To the same effect is In Re Lewis Estate, 39 Nev 445, 159 P 961.

In coming to the conclusion that the word "devise" is used in its technical sense the courts in these cases base their decision on the wording of the other statutes regarding descent and succession, pointing out that the legislatures always used the terms therein in their present technical sense. Our legislature has not been so careful in the use of these terms. Sec 56–0514 NDRC 1943 permits the word "devise" to be used to pass all property of the testator, real or personal, in certain cases. Sec 56–0515 permits a testator to use the words "devise" or

"bequest" or "any other terms" denoting his intent to dispose of all his real or personal property. Our statutes do not always restrict the use of the words entirely to their technical meaning.

In Re Breen Estate, 94 Ky 474, 146 P 1147, the court holds that in the section reading, "Any married person having no children may devise one-half of his or her property to other persons than husband or wife," the word "devise" is used with respect to the disposal of personal as well as real property. In the case of Logan v. Logan, 11 Colo 44, 17 P 99, the court says:

"It is true that in their strict legal application the terms, 'legacy' and 'bequest' refer to gifts by will of personal estate. There is nothing in the derivation of these words to so distinguish them but such is their proper legal signification, as all authorities agree. It is a conceded fact, however, that they are not always employed according to their technical meaning and that they are not always to be so construed. . . . Our legislature has not always used these words in their strict legal sense, which fact of itself would authorize us to inquire in what sense they were employed in the present instance."

In a long annotation in 4 LRA 246 the majority rule is said to favor the technical use of the terms but the conclusion reached is that "It is obvious, however, that the view that may be taken on this point with reference to any particular statute is likely to be affected by the context or the purpose of the statute or both so that any general rule on the subject can only be prima facie and may yield to other indicia of the legislative intent." See also 57 Am Jur 934.

A further consideration of Secs 56–0420 and 56–0527 shows the evident intent of the legislature to make those statutes carry out the will of the testatrix. Sec. 56–0527, providing for a lapse, does not apply if the testatrix makes other provision in case of the predecease of a devisee. Sec 56–0420 provides that the lineal descendants shall take the estate, "so given by the will in the *same manner as the devisee would have* done had he survived the testator."

Sec 56–0501 NDRC 1943 provides: "A will is to be construed according to the intention of the testator." Priewe v. Priewe, 43 ND 509, 517, 175 NW 732; Crabtree v. Kelly, 65 ND 501, 260

NW 262. "In construing a will the wishes of the testator as gathered from the will are to be followed if they violate no public policy or positive rule of law." Hester v. Sammons et al, 171 Va 142, 198 SE 466, 118 ALR 544. See also Schneller v. Schneller, 356 Ill 89, 190 NE 121, 92 ALR 838.

In this case the will provided, "I give and bequeath to my brothers and sisters, John . . . and Mrs. James Walsh the remaining one-half of all property of which I. die seized, real, personal and mixed, wheresoever situated." This provision of the will does not use the word "devise" but uses the words "give and bequeath." That that is inclusive of all the property is shown by the last part of the sentence. In the case of Campbell et ux v. Cole et al, 71 NJ Eq 327, 64 A 461, the court says: "While the word 'bequeathed' is naturally applicable to personal property, yet, when associated in a will with the word 'give' it is capable of transmitting real estate if such appears to have been the testator's intention."

In the case of Neblett et al v. Smith, 142 Va 840, 128 SE 247, 251, the court says: "Bequests usually deal only with personal property but gifts have a wider significance. The definitions of these words are not rigid. Courts often construe the word, 'bequest' to mean 'devise' and 'devise' to mean 'bequest.' " Roundtree v. Purcell, 11 Ind App 533, 39 NE 747.

It is clear that the testatrix intended to pass all her property by the phrase, "give and bequeath" used in the will. It is also clear that John Molzhon and Mrs. James Walsh, had they lived, would have taken their one-eighth share of all the remaining one-half of her property as provided in the will just as the living brothers and sisters now without objection are receiving their one-eighth share. The last phrase of Sec 56–0420 provides that the descendants take the estate so given by the will *in the same manner* as the devisees would have taken their share of both the real and personal property. Surely the intent of the testatrix should govern and the words "devise" and "devisee" in the non-lapse statute, Sec 56–0420, should be construed to permit the intent of the testatrix to be carried out.

Applying the rules of statutory construction to ascertain the intent of the legislature in passing the cognate acts here involved

120

and the intent of the testatrix under the circumstances shown in the evidence it must be held that Ronald Molzhon and John James Walsh come within the term "lineal descendants" as used in Sec 56–0420 NDRC 1943, and are entitled to share in both the real and personal estate of Rose Katherine Hoellinger.

The judgment of the district court is affirmed. ·

NUESSLE, C. J., CHRISTIANSON, MORRIS and BURKE, JJ., concur.