[File No. 7181]

THEO. OPHAUG, Oscar Johnson, Floyd Erickson, Henry Ellingson, Vernon. Nesheim, Appellants, v. LARS A. HILDRE, L. B. Tweed, Albert Schindele, H. Haroldson and Ronald MacMillan, as County Commissioners of Nelson County, North Dakota, and Ingvald P. Quam, as County Auditor of Nelson County, North Dakota, Respondents.

(42 NW2d 438)

Opinion filed April 26, 1950

*Sinness & Duffy,* for appellants.

*Lysle C. Boostrom,* States Attorney and *Olaf M. Thorsen,* for respondent.

*Arley Bjella,* amicus curiae.

GRIMSON, J. This is an action brought by the plaintiffs in behalf of themselves and other residents and tax payers of Nelson County for the purpose of restraining the Board of County Commissioners of Nelson County from using any money received for the memorial fund under Chapter 125 SL 1947, to help pay for a courthouse in Nelson County. They claim that a courthouse is not a suitable memorial nor properly designated as such and that the use of the memorial fund in connection with the proceeds of a bond issue for the erection of a courthouse

would be an illegal commingling of such funds. The defendants claim that a courthouse is a proper memorial and that the use of the two funds in the erection of a memorial courthouse is lawful. Upon trial the district court found for the defendants and dismissed the action. The appeal is taken by the plaintiffs from a judgment so entered and a trial de novo is requested.

The undisputed evidence shows that for years Nelson County has been very much in need of a courthouse. Several attempts in the past to have one built had failed At a special election held on June 29, 1948, the question of issuing Nelson County bonds in the amount of not to exceed $132,000.00, the maximum for which Nelson County could bond, for the purpose of "providing a county building for a courthouse" was submitted to the voters and carried by a vote of two to one. The bonds so authorized were duly sold.

In accordance with Chapter 125 SL 1947 the Board of County Commissioners of Nelson County on July 27, 1948, placed in the Nelson County proposed annual budget the sum of $36,000.00 to be raised by a 4 mill tax levy for a "Nelson County memorial fund" which budget was afterwards, on hearing, approved and the levy made.

On October 7, 1948, the board of county commissioners passed a resolution designating the courthouse to be erected and built at the county seat "as a World War II memorial" and "allocated for use of the building and erecting of such courthouse and memorial "the funds raised by the levy to the extent necessary to complete such memorial." The plaintiffs seek to enjoin the carrying out of that resolution.

Counsel agree that three issues are raised in this lawsuit; "1. Is a courthouse a suitable memorial? 2. Was the courthouse properly designated as a memorial? 3. May the memorial fund be commingled with the bond raised building fund?"

For a determination of these issues it will be necessary to construe Chapter 125 SL 1947, Sec 11–3201, 1949 Supplement NDRC 1943. In the construction of a statute the intent of the legislature must be ascertained. State ex rel Langer v. Totten, 44 ND 557, 175 NW 563. The intent must be ascertained from the language of the statute as a whole. City of Dickinson v.

Geo. Thress, 69 ND 748, 290 NW 653; State of North Dakota v. Sheridan County, 72 ND 254, 6 NW2d 51. Consideration should be given to the ordinary sense of the words used, their context, the purpose sought to be accomplished, Harding v. City of Dickinson, 76 ND 71, 33 NW2d 626, and other related laws and circumstances. Hoellinger v. Molzhon, ante 108, 41 NW 2d 217. The meaning of ambiguous or conflicting phrases must be determined. 59 CJ 999; 50 Am Jur 209; State v. Bethlehem Steel Corporation, 37 Del 441, 184 A 873; Clayton v. Colo. & Southern R.R. Co. 51 F2d 977, 82 ALR 417.

The matter of what is a suitable memorial under Chapter 125 SL 1947 was discussed by this court in Gehrke et al v. The Board of County Commissioners of Divide County, 58 ND 407, 226 NW 536. It is there said:

"There is not general agreement as to what form a memorial or recognition should take. Many believe it should be characterized by a shaft, obelisk or tablet, and constructed of granite or other materials that do not readily deteriorate, and that the same should contain proper inscriptions commemorative of persons and deeds. There is no doubt but what such construction would be appropriate. On the other hand, 'Many believe that a more suitable recognition is evidenced by a structure or edifice that can be used and enjoyed by the living.'

"It is not necessary to enter into an academic discussion of the merits of these different views. Suffice it to be said that from the earliest periods of time of civilized man, memorials have frequently taken one or the other form. The instances are numerous throughout the centuries where men have erected for the purpose of commemorating some distinguished personage, or the occurrence of some great event, memorials, consisting of halls, art galleries, libraries, institutions of learning, cathedrals, and other edifices and structures designed for human habitation, enjoyment and development."

There has been a trend in modern times away from the obelisk and monument towards a memorial that could by its very use inspire the living and impress upon them the ideals or principles manifested in the lives of the persons or in the events that

are memorialized. Professor Joseph Hudnut, Dean of Architecture at Harvard University says: "Whatever contains and sustains that for which our soldiers fought is a commemoration more eloquent and enduring than the loftiest monument."

In our state the Liberty Memorial Building at the Capitol was erected in that spirit. So have several community buildings and a few courthouses been built as memorials. All these buildings have had in addition to the special memorial feature a purpose or use for the benefit of the living.

Chapter 125 SL 1947 provides for memorials "or other suitable recognition in commemoration of the people of the county who rendered services or lost their lives in the service of their country." The services and sacrifices of those who participated in the world wars were rendered for love of our country and of our way of life.

It would seem that a courthouse would be peculiarly appropriate for the perpetuation of those ideals. It is in the courthouse that the public business concerning every individual in the county is carried on. It is there he goes for protection when his freedom is assailed or his liberty restrained. It is there he goes for a determination of his rights. In addition to that the court room in, at least, the smaller county seats is the place which is always open for gatherings of a public and patriotic nature. It becomes the community center. Certainly, a courthouse can be made a very appropriate memorial of the services and sacrifices of those who fought in the last two wars and for the perpetuation of the ideals for which they fought.

Plaintiffs, however, argue that because the specific reference to the erection of a memorial courthouse in the 1929 law was omitted in Chapter 125 SL 1947, therefore, the legislative intent must have been to exclude courthouses as suitable memorials.

Neither in the original memorial law, Chapter 181 SL 1919, nor in the amended law, Chapter 117 SL 1927, was any reference made to any specific memorials, yet this court in Gehrke v. Board of County Commissioners, supra, held that a community building was a suitable memorial under that law. A further examination of the former laws regarding memorials for the pur-

pose of determining the intent of the legislature discloses that in Chapter 174 SL 1929, authority was given to the board of county commissioners to join with a city within the county in erecting a community building. A special provision was made in Chapter 175 SL 1929 for combining other funds of the county with the memorial fund for the purpose of erecting a memorial courthouse. The real purpose of these laws seems to have been to provide more funds so that larger buildings could be erected as memorials. The designation of a memorial was still left in the discretion of the board of county commissioners. Both these laws were allowed to expire in 1937 and were not included in the 1943 Revised Code.

After the expiration of those laws World War II was fought. The legislature, impressed with the war services of our citizens and again desiring to provide authority for some recognition of those services, enacted Chapter 125 SL 1947. That was not enacted as an amendment of the old laws. It is an entirely new law but embodies the basic principles of the 1927 act. It does not make any reference to any specific kind of memorial. It, however, authorizes a much larger tax levy. Instead of a limitation of 4 mills as provided in the original law this law authorizes an annual levy of 4 mills for five years. This law also provides for donations and the use of available moneys in the general fund without limitation. It again authorizes the board of county commissioners to join with cities, school districts and other governmental agencies in the erection and operation of a memorial. It also provides for the participation of other governmental bodies in the erection of memorials generally rather than only in community buildings and courthouses.

The legislature must be presumed to have known that community buildings and courthouses had been erected as memorials under the old law. In the new law no prohibition is made against continuing the erection of such buildings as memorials. Instead larger means are provided for the erection of even larger and more elaborate memorials. Considering the wording and evident purposes of Chapter 125 SL 1947, no intention of the legislature to prohibit the erecting of courthouses as memorials can be inferred from the action of the legislature in omitting

therefrom special reference to courthouses as suitable memorials. All the facts and circumstances existing at the time of the writing of the new law indicates that the intention of the legislature was to provide sufficient funds but to leave the matter of the kind of memorials entirely in the discretion of the board of county commissioners.

Appellants further argue that the failure of a committee of the 1949 Legislature to act on a proposed amendment to Chapter 125 SL 1947, to include courthouses in an enumeration of approved memorials further indicates a legislative intent to exclude courthouses from consideration as appropriate memorials. In Reed v. Huston, 24 Idaho 26, 132 Pac 109, it is held "The *legislative intent* that controls in a construction of statutes has reference to the legislature which passed the given act and that intent is indicated by the *action* of the legislature and not by their *failure to act.*" Here the committee having the amendment for consideration failed to include the amendment when it reported House Bill 272. Certainly the failure of a committee to act is no indication of what the legislature would have done and cannot be considered in determining the intent of the legislature. See also 70 ALR 38; 50 Am Jur 325.

Appellants next argue that the courthouse was not properly designated by the board of county commissioners of Nelson County as a memorial. Reference to the resolution designating the courthouse as a memorial has heretofore been made. Chapter 125 SL 1947, as well as the Chapter 117 SL 1927 left the matter of selection of the memorial and the location entirely to the discretion of the county commissioners. In Gehrke v. Board of County Commissioners, supra, this court held, that "Chapter 117 SL 1927 vests in the board of county commissioners the power to determine whether a war memorial shall be erected and the place of the location." It is not contended in the case at bar that there was any fraud involved or any improper influence used upon the county commissioners of Nelson County. There is nothing to show an abuse of discretion. It is true that petitions were afterwards filed both for and against the action of the board. On this matter this court says in Gehrke v. Board of County Commissioners, supra: "The board of course may

consider petitions or remonstrances if it sees fit to do so, but it is not bound thereby. The commissioners must exercise their discretion in the matter, and having done so the fact that their judgment is counter to that of a large number of the citizens of their county is not alone sufficient reason for interfering with their determination." Neither is there merit to the objection that because the courthouse had to be located in the county seat the commissioners' discretion on the location was taken away. They had a right to locate the memorial in the county seat if in their discretion they determined that to be a proper place, whether they designated the courthouse or not. There is no showing that the board of county commissioners acted improperly in designating the courthouse as a memorial.

Finally, the appellants contend that using the memorial fund jointly with the fund raised by bonding for the purpose of building a courthouse is a commingling of these funds contrary to law.

Chapter 125 SL 1947, Sec 11–3201, 1949 Supplement, authorizes the board of county commissioners of any county in this state to levy a tax annually for a period of five years not in excess of 4 mills on the dollar of the assessed valuation of all property in the county in any one year, for the purpose of erecting a memorial, and to use funds donated to the county for that purpose. It also authorizes the use of money "out of the general fund of such county, if there is sufficient money in said fund, in conjunction with the funds so donated or obtained by such levy and tax . . . provided, however, that nothing herein contained shall be construed to prohibit such board from expending any additional moneys derived from sources other than taxation."

In the case of Minis v. The United States, 15 Peters (US) 791, 10 L ed U.S. Supreme Court Reports 421, it is held that "The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of its extending to cases not intended by the legislature to be brought within its purview." In 59 CJ 1087, the principle is laid down that "a proviso should be construed together with the enacting clause, with a view of giving effect to each and to carrying out

the intention of the legislature as manifested in the entire act." See also 50 Am Jur 456.

The proviso heretofore quoted was first used in Chapter 117 SL 1927. That chapter provided that the board of county commissioners could use for the purpose of erecting a memorial any available money from the general fund, the amounts already raised by taxation under Chapter 181 SL 1919, and in addition, could make a one mill tax levy. Authority was also granted to the board of county commissioners to use such donations for that purpose as might be received. Then followed a special limitation that the board should "not expend tax moneys in excess of the maximum levy permitted" under that Chapter together with what had been levied under the provisions of Chapter 181 SL 1919. After making that limitation on the use of tax moneys the legislature added the provision heretofore quoted, that "nothing herein contained shall be construed to prohibit said board from expending any additional moneys derived from sources other than taxation."

Unless the legislature intended the word *taxation* here used to refer only to the tax levies mentioned in the preceding sentence, there would be a conflict with the provision in the same section allowing the use of moneys from the general fund which is raised by taxation other than by the levies provided by the act. Only that construction will accord with the evident purpose of the proviso to make clear that no limitation was placed on the use of any moneys except the moneys raised by the tax levies for this particular purpose.

This intention of the legislature is even more clearly indicated by the language used in Chapter 125 SL 1947, Sec. 3 of that act which reads: "The board of county commissioners may join with cities, and school districts in the erection and operation of a memorial." The funds to be furnished by cities and school districts would ordinarily be raised by them by taxation. The purpose was to make additional moneys available for the erection of a memorial. That result can be attained only if the word *taxation* in the proviso under consideration applies only to the tax levies provided for in the preceding sentence and not to the taxation by which the additional moneys contemplated in Sec. 3

would ordinarily be raised. If it did the cities and school districts would not have the funds to join in the memorial and the contradictory terms would nullify the purpose of the act.

Any doubtful, ambiguous or contradictory language should be construed so as to carry out the intent of the legislature. State v. Totten, supra. State v. Fargo Bottling Works, 19 ND 396, 124 NW 387, 26 LRA (NS) 872; State v. Hanson, 16 ND 347, 113 NW 371; Power v. Hamilton, 22 ND 177, 13 NW 664.

As we construe Chapter 125 SL 1947, the legislature intended to limit the power of the board of county commissioners to raise money by special taxation for the memorial fund to the tax levies provided in that Chapter. No limitation is placed on the use of moneys from the general fund or other additional moneys even if derived from other taxation permitted by law. A building fund raised by bonding the county even if eventually repaid by taxation is a source permitted by the statute to be used in conjunction with the memorial fund as long as each fund is used for the purposes provided by the law for the use of that fund.

It is true that borrowed money must be kept in a separate fund distinct from all other funds to be used only for the purposes for which it was borrowed. Section 21–0338 NDRC 1943. It is also true that the memorial fund must be kept separate and distinct from all other moneys by the county treasurer, Chapter 125 SL 1947, Section 11–3202, 1949 Supplement, and that the memorial fund must be used "solely for the purpose of erecting such memorial or memorials or other suitable recognition." Chapter 125 SL 1947, Section 11–3201, 1949 Supplement, NDRC 1943. Neither said Section 21–0338 nor Section 11–3201, however, provides that no other moneys may be used for those purposes in addition to these funds. The provision is merely that these funds shall not be used for any other purposes.

The evidence in this case shows that all of the money raised by bonding will be used in the erection of a "building for a courthouse" and all the money in the memorial fund will be used for a memorial. Both are used for the purpose designated by the law even if they are used in erecting the same dual purpose ed-

232

ifice. The funds can still be kept separate and both used for the construction of the memorial courthouse.

The judgment of the District Court is affirmed.

NUESSLE, C. J., and MORRIS, BURKE and CHRISTIANSON, JJ., concur.