ESTATE of William J. BALLANTINE,
Deceased.

Edythe BANNERMAN, Petitioner and
Appellant,

v.

Ila CLOSE; William L. (Ballantine) Math-
ews; Irvie E. Ballantine, a/k/a Irving E.
Ballantine, a/k/a Ervie E. Ballantine, an
Incompetent Person; and Kenneth J. Mul-
len, as Special Guardian of said Incom-
petent, Respondents,
and
William L. (Ballantine) Mathews,
Respondent on Appeal.

No. 7589.

Supreme Court of North Dakota.

Feb. 13, 1957.

David Kessler, Grand Forks, for appel-
lant.

Shaft, Benson & Shaft, Grand Forks,
for respondent William L. (Ballantine)
Mathews.

JOHNSON, Judge.

The sole and only issue presented for de-
termination in this case is whether a natu-
ral born child who has been adopted out of
the family retains the right to inherit from
his natural parents.

William J. Ballantine, predeceased by his
wife, was the father of four children, Ila
Close, Edythe Bannerman, Irvie E. Ballan-
tine, and William L. (Ballantine) Mathews,
the respondent, now 33 years of age. He
was, as a small child, in November 1927
adopted into another family by the name of
Mathews. William L. (Ballantine) Math-
ews, now claims the right to inherit one-
fourth of the estate of his deceased father,

William J. Ballantine. The petitioner, Edythe Bannerman, as administratrix of her father's estate, contends that by the adoption of her brother, William L. (Ballantine) Mathews, into the Mathews family, he gained the right to inherit from his adopted parents and relatives by adoption, but lost the right to inherit from his natural parents or relatives.

In due course the administratrix of the estate of William J. Ballantine presented her final report and accounting and petition for distribution, requesting that the balance of the estate, after payment of the expenses, be distributed to Ila Close, Edythe Bannerman and Irvie E. Ballantine. William L. (Ballantine) Mathews objected to the distribution of the estate among the persons named, claiming a right to a one-fourth share of the estate of his father. The county court of Grand Forks County, after considering oral arguments and briefs, on June 17, 1955 made an order allowing the final report and account but denying the petition for distribution requested by the administratrix and ordering the residue of the estate be distributed among the four children of William J. Ballantine, deceased, thus allowing William L. (Ballantine) Mathews, a one-fourth interest in his father's estate. The administratrix appealed from the order of the county court to the district court of Grand Forks County. The district court affirmed the order of the county court. Thereafter the administratrix appealed to this court.

The question here presented is of first impression in this state. The following statutes have a bearing upon the question:

"Status of Adopted Child. The child so adopted shall be deemed, as respects all legal consequences and incidents of the natural relation of parent and child, the child of such parent or parents by adoption the same as if he had been born to them in lawful wedlock." Section 14–1113, NDRC 1943.

"Natural Parents' Rights and Liabilities. The natural parents of an adopted child shall be deprived by the decree of adoption of all legal rights respecting the child, and the child shall be free from all obligations of maintenance and obedience respecting his natural parents." Section 14–1114, NDRC 1943.

These statutes are found under the title, "Domestic Relations and Persons" in the North Dakota Revised Code of 1943. They fix the status of the adopted and the adopting parties and the natural parents and the adopted child, and declare the rights and obligations of each to the other. No mention is made of the interest that either may have in the estate of the other. If the adopted child does not inherit from its natural parents, it is because of the adoption statutes.

"Order of Succession to Property. When any person having title to any estate not otherwise limited by marriage contract dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this code, subject to the payment of his debts, in the following manner:

"1. If the decedent leaves:

"a. [not applicable]

"b. [not applicable]

"c. No surviving husband or wife, but leaves issue, the whole estate goes to such issue, and if such issue consists of more than one child living, or of one child, or more than one child, living, and the lawful issue of one or more deceased children, then the estate goes in equal shares to the children living, or to the child or children living and the issue of the deceased child or children by right of representation, but if the decedent's child or children shall be dead, but shall have left issue, all the estate goes to such issue by right of representation;" Section 56–0104, NDRC 1943.

This statute is under the title of "Succession and Wills", NDRC 1943.

William L. (Ballantine) Mathews was the lawful issue of his father and mother, the Ballantines, in the sense that he was born of their marriage. Under the statute of succession quoted, unless the adoption of William L. Ballantine into the Mathews family deprives him of his share of his father's estate, he is entitled thereto.

In an attempt to determine the legislative intent at the time of the original enactment of the statute dealing with the status of an adopted child, now Section 14–1113, NDRC 1943, it will be helpful to trace its development. This statute came into our law as Section 6 of Chapter 4 of the 1891 Session Laws. It then read:

"Status of Adopted Child. A child so adopted as aforesaid shall be deemed as respects all legal consequences and incidents of the natural relation of parent and child, the child of such parent or parents by adoption, the same as if he had been born to them in lawful wedlock; *except that such adoption shall not in itself constitute such child the heir of such parent or parents by adoption.*" (Emphasis supplied.)

The italicized language clearly evidences a legislative intent not to change the child's line of descent. By this statute it did not become the "heir" of its adoptive parents. It must, therefore, be presumed that the legislature intended that it inherit as an heir of its natural parents. Otherwise the italicized language would deprive it of inheritance both from the adopting parents and the natural parents. As the "issue" of its natural parents under the terms of Section 56–0104, subd. 1, par. c, NDRC 1943 it would inherit from the natural parents. Under the statute, Chapter 4, Section 6 of the 1891 Session Laws, the child by its adoption still retained its rights of inheritance as the natural child of its natural parents. If this statute had never been

changed, the question here presented would perhaps never have arisen.

Section 6 of Chapter 4 of the 1891 Session Laws appears as Section 2804 of the Revised Codes of North Dakota of 1895 without a change, save that the exception therein, "that such adoption shall not in itself constitute such child the heir of such parent or parents by adoption", was omitted. The statute, with this exception omitted appears in the Revised Codes of North Dakota, 1899, as Section 2804; in the Revised Codes of North Dakota of 1905 as Section 4116; in the Compiled Laws of North Dakota, 1913, as Section 4448, and now as Section 14–1113, NDRC 1943.

If the statute with the exception mentioned in it, evidenced, as we believe, a legislative intent not to disturb the child's right of inheritance under the statutes of succession from its natural parents, the omission of the exception therefrom in the 1895 Code, the source of our present statute, would not of itself alter this legislative intent or change its meaning. With the exception omitted and as now constituted, Section 14–1113, NDRC 1943, has been so construed as to have the legal effect of permitting an adopted child to inherit from the adopting parents.

In the case of Hoellinger v. Molzhon, 77 N.D. 108, 41 N.W.2d 217, 220, 19 A.L.R.2d 1147, it was held that an adopted child comes within the meaning of "lineal descendants" as used in Section 56–0402, NDRC 1943, and as such may take a legacy given by will to one of the adopting parents and thus prevent the legacy from lapsing when the legatee dies before the testatrix. It was further held that under Section 14–1113, NDRC 1943, adopted children are placed in the same position as far as possible as children born in lawful wedlock, including the right of inheritance from the adopting parents, and are placed by the law in the line of descent to all intents and purposes the same as children born in lawful wedlock are placed there by birth. Thus

by construction of the statute an adopted child has been placed by the law in the line of descent and been made a lineal descendant of its adopting parents. The legal effect of this holding is to make an adopted child the heir of its adopting parents and enables it to inherit from and through them. Such determination, however, does not remove the adopted child from the line of descent from its natural parents. Such removal can only be accomplished by express declaration or necessary implication of the statute.

In the Hoellinger case, after going into the history of the statute, it was stated:

"It may be contended that the law as first adopted covered only the relationship between the adopting parent or parents and the adopted child. If so, then the limitation that the relationship should apply only to the parent or parents and the child was removed by the 1891 amendment but a provision was made that the adoption in itself should not make the child an heir of the adopting parent or parents. Finally that limitation also was omitted so that now and ever since 1895 the relationship of parent or parents and child is created by the adoption as against all the world and inheritance by the adopted child from the adopting parent or parents is established as if the child had been born to them in lawful wedlock. It is clear that the legislature intended to place the adopted child as far as possible in the same position as the natural child to all intents and purposes. That also is always the intent of the adopting parents." See also Borner v. Larson, 70 N.D. 313, 293 N.W. 836.

Neither the cited decisions nor the adoption statutes warrant the conclusion that the omission of the exception from the 1891 statute so completely separates the child from its natural parents as to deprive it of its right of inheritance under the statute of succession. In other words, the present statute, Section 14–1113, NDRC 1943, is subject to the same construction now as it was in 1891, so far as "all legal consequences and incidents of the natural relation of parent and child" are concerned. Under the statute as originally enacted, "all legal consequences" did not include the loss of the right of inheritance under the succession statute. It could not have been the intent of the 1891 legislature to deprive the child of its right to inherit from its natural parents and at the same time by explicit provision of the statute provide that the adoption shall not in itself constitute such child the "heir" of the adopting parents. It is reasonable to infer that the child would retain the right of inheritance from its natural parents, although adopted out, as long as the legislature had seen fit to eliminate by specific provision that it was not an heir of the adopting parents.

We believe that the present statutes, insofar as the inheritance of an adopted child from its natural parents is concerned, mean exactly the same as they did at the time of the enactment of Chapter 4, Section 6 of the 1891 Session Laws. We, therefore, conclude that as yet the legislature of this state has not by specific provision of law or by necessary implication indicated that an adopted child is so totally separated from its natural parents, or that the substitution of one parent for the other is so complete as to terminate and abrogate its right to inherit from its natural parents under our statute of succession.

Consanguinity, it has been held, is so fundamental in the statutes of Succession and Distribution that it may be ignored only when the courts are forced to do so, by express terms of the statute or by construction thereof resulting from inexorable implication of the language used. 1 Am.Jur., Adoption of Children, Section 57, page 656; Hockaday v. Lynn, 200 Mo. 456, 98 S.W. 585, 8 L.R.A.,N.S., 117, 118 Am.St. Rep. 672, 9 Ann.Cas. 775; In re Roderick's Estate, 158 Wash. 377, 291 P. 325, 80 A.L.R. 1398.

In a legal sense, an adopted ·child is the child of both its natural and its adopting parents, and is not, because of the adoption, deprived of its right of inheritance from its natural parents, unless the statute provides so expressly. 1 Am.Jur., Adoption of Children, Section 57, page 656; Burnes v. Burnes, 8 Cir., 137 F. 781, certiorari denied 199 U.S. 605, 26 S.Ct. 746, 50 L.Ed. 330; Slattery v. Hartford-Connecticut Trust Co., 115 Conn. 163, 161 A. 79; In re Klapp's Estate, 197 Mich. 615, 164 N.W. 381, L.R.A.1918A, 818; Roberts v. Roberts, 160 Minn. 140, 199 N.W. 581. See note 11 for other cases.

In the absence of a statute to the contrary, although the child inherits from the adopting parents, it still inherits from or through his blood relatives or his natural parents. 2 C.J.S. Adoption of Children, § 63, p. 454; In re Klapp's Estate, supra; Roberts v. Roberts, supra; In re Roderick's Estate, supra; Sorenson v. Churchill, 51 S.D. 113, 212 N.W. 488; In re Sauer's Estate, 216 Wis. 289, 257 N.W. 28.

In Sorenson v. Churchill, supra, 212 N.W. at page 489, the court states as one reason for the rule:

"The adopted child, the person principally affected by the transaction, has no choice and gives no consent. * * But no one consents for the innocent and helpless subject of the transfer that he shall lose the right to inherit from his natural parent, whose issue, under section 701, he does not cease to be when the right to his control passes to another."

In Annotation: Adoption—Inheritance from Natural Kin, 37 A.L.R.2d 333, at page 340, the author says:

"A statute which includes as a principal or dominant feature the establishing of the child as an heir of the adopting parent, without making reference to the inheritance from natural parents, is not likely to be construed as depriving the child of that inheritance."

The great weight of authority of the adjudicated cases is to the effect that an adoption of a child does not deprive it of its right of inheritance. It seems reasonable that the legislative intent to deprive a child of its right of inheritance from its natural parent or parents ought to be express and unmistakable. Just one example will illustrate the importance of this statement. A widow with one child marries a man with no children. He desires to adopt the child of his wife. She consents thereto, and joins in the petition. If the construction contended for ·by the appellant were to be adopted, that the adoption constitutes a complete substitution· of parents and terminates all rights of the adopted child, including the right of inheritance from natural parents, can it be said that the legislature intended that the adoption of the child by the husband would deprive the child of inheriting its share of the estate of the natural mother? We believe that before such a construction is placed upon the statutes, there should be explicit legislative intent to that effect, or the implication of the adoption statute should be so inexorable as to force such construction. In this state that intent is not to be found in the adoption statutes dealing with the status of the child after its adoption.

If the construction contended for by the appellant were adopted we would come into conflict with the provisions of Section 1–0227, NDRC 1943. This section provides:

"Conflicts Adjusted. If the provisions of any chapter or title conflict with or contravene the provisions of any other chapter of [or] title, the provisions of each chapter or title must prevail as to all matters in question arising thereunder out of the same subject matter." Section 1–0227, ND RC 1943.

Nowhere is there any evidence in the succession statutes of a legislative intent that the word "issue", as used therein, withdraws an adopted child from its usual meaning.

There are many decisions of other jurisdictions dealing with this subject. They arise under statutes which, although similar in general purport, are not worded as our adoption statutes.

■ There has been considerable confusion among the courts as to the legal effect of the adoption of a child insofar as it affects its right to inherit from its natural parents or their kin. It would serve no useful purpose to attempt to analyze these decisions. They are found in great numbers in 37 A.L.R.2d 333. It may be noted here, however, that in several jurisdictions where this problem has come up, the legislature has by express provision of the law declared that an adopted child may not inherit from its natural parents. In such jurisdictions by express provision of statute the adoption eliminates and completely severs the child from its natural parents and takes away the right of inheritance. This court would be exceeding its functions if it were to determine that an adopted child under our statutes does not have the right to inherit from its natural parents since there is no specific statute to that effect, nor do the adoption statutes compel such construction. Whether a child should inherit from its natural parents after being adopted out is a question of legislative policy. We feel that before an adopted child is to be deprived of its right of inheritance from its natural parents, the legislature should so provide in unequivocal terms.

The order of the district court is affirmed.

GRIMSON, C. J., and BURKE, MORRIS and SATHRE, JJ., concur.