Bennie BECK, Petitioner and Respondent,

v.

WORKMEN'S COMPENSATION BUREAU for and in Behalf of the UNEMPLOY-MENT COMPENSATION DIVISION, a department of the State of North Dakota, Respondent and Appellant.

No. 8234.

Supreme Court of North Dakota.

April 20, 1966.

Lawrence E. Watson, Sp. Asst. Atty. Gen., Bismarck, for respondent and appellant.

Hjellum, Weiss, Nerison & Jukkala, Jamestown, for petitioner and respondent.

KNUDSON, Judge.

This is an appeal by the Workmen's Compensation Bureau on behalf of the Unemployment Compensation Division from a judgment of the District Court of Burleigh County in favor of the petitioner, Bennie Beck. The judgment reversed the decision of the Board of Commissioners of the Workmen's Compensation Bureau denying unemployment benefits to the petitioner.

The Workmen's Compensation Bureau assigned six specifications of error which may be resolved into one issue: that is, whether the petitioner is entitled to unemployment benefits, being otherwise qualified for such benefits, when the petitioner is also engaged in a self-employment enterprise.

The facts were established primarily from the petitioner's testimony given before the Appeal Tribunal and the Board of Commissioners. The petitioner was employed by Lindberg Builders from April 23, 1960, through November 17, 1960, when he was laid off because work had to be discontinued because of freeze-up. The petitioner is married and has five daughters and one son, ranging from eleven to eighteen years of age. The son is the eldest child and attends college during the regular school term, but returns home during the summer months and does some construction work and some work on the family farm during his free time. The younger children all live at home. The petitioner owns 560 acres of land, of which 130 acres can be cultivated, and has 66 acres, in addition to the land which can be cultivated, in the Soil Bank. He usually crops 80 to 85 acres each year. He has the necessary equipment, except a drill, to carry on a farm operation. The equipment is old and small in size. He buys his seed and usually hires a neighbor to assist in or do the spring's work of preparing the soil and seeding the crop. He does some of the farm work when he is not able to find work off the farm, and on occasional weekends and evenings when he is employed off the farm. His wife and children and

the neighbors do most of the farm work. He either pays the neighbors for their work or his wife works for them in payment. The only livestock on the farm are sixteen head of cattle. The petitioner testified that it took him about an hour a day to feed the cattle during the winter months when he was unemployed, but that he did not have to be on the farm to feed the cattle because his wife and children would do it when he was not there. He took nine days off from his construction job during 1960, with the permission of his employer, to put up hay on the farm. The gross income from the farm in 1960· was approximately $3,700.00, and he earned approximately $2,500.00 from his employment off the farm. There is nothing in the record showing the net income from the farm after deducting the farm expenses. During his unemployment the petitioner has sought work without success from two employers other than his regular employer. No one has offered him work during the period for which he claimed unemployment benefits. He testified that he would travel almost anywhere in the state to obtain employment if it was offered to him. He stayed in town most of the time during his last employment and returned to the farm only on weekends. He testified that he does not have to be present on the farm because his wife and· children can manage the duties there. The petitioner has not made plans to either abandon the farm and rent it out or to increase his farming activities. He applied for a Farmers ·Home Administration loan but it was refused because of his employment off the farm. The petitioner expects to continue his employment off the farm whenever it is available. He travels wherever his employment takes him in the state and lives away· from home when the distance it too great to commute. The petitioner has worked off the farm in every year since 1952, usually in construction work, from early spring until freeze-up in the fall, and the petitioner has been granted unemployment compensation benefits during periods of unemployment for each of the several years

from 1952 up to the time of this claim for benefits.

The respondent's primary contention is that under our statutes an individual cannot be self-employed and at the same time be unemployed and eligible for unemployment compensation benefits. This court has not had occasion to apply our statutes to the question raised by the respondent. Our statutes do not make any reference to or define the term "self-employed." It appears that the petitioner has satisfied the other statutory conditions required of him to be eligible for benefits.

We will first consider the statutes relating to the employment status of the individual under the Unemployment Act.

Section 52–01–01(12), N.D.C.C.:

"Employee" means every individual, * * * who is performing, or * * * has performed, *services* for an employer in an employment subject to this title; [Emphasis supplied]

Section 52–01–01(13), N.D.C.C.:

"Employment" means:

a. Any *service* * * * performed for wages or under any contract of hire, written or oral, express or implied;

* * * * * *

e. *Services* performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this title irrespective of whether the common-law relationship of master and servant exists * * *. [Emphasis supplied]

Section 52–01–01, subsection 21, N.D.C.C., defines "unemployed" as follows:

21. "Unemployed." An individual shall be deemed "unemployed" with respect to any week during which he performs *no services* and with respect to which no wages are payable to him, or with respect to any week of less than full-

time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The bureau shall prescribe regulations applicable to unemployed individuals making such distinctions in the procedures as to total unemployment, part-total unemployment, partial unemployment of individuals attached to their regular jobs, and other forms of short-time work, as the bureau deems necessary; [Emphasis supplied]

Section 52–01–01, subsection 22, N.D.C.C., defines "wages" as follows:

"Wages" means all remuneration for *service* from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. * * * [Emphasis supplied]

In interpreting these sections we are guided by the rules laid down by this Court.

The intention of the lawmakers must be deduced from a view of the whole statute, and of every part thereof taken and compared together. Schneider v. Marquart, 45 N.D. 390, 395, 178 N.W. 195, 196; 25 R.C.L. p. 1004 et seq.; 59 C.J. p. 995 et seq.

State v. Sheridan County, 72 N.D. 254, 6 N.W.2d 51, 54.

In the construction of a statute words are to be given their plain, ordinary and commonly understood meaning. Bronson v. Johnson, 76 N.D. 122, 33 N.W.2d 819; Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849; Salzseider v. Brunsdale, N.D., 94 N.W.2d 502.

Berg v. Torgerson, N.D., 100 N.W.2d 153, 155.

See also Cowl v. Wentz, N.D., 107 N.W. 2d 697, 699.

Consideration should be given to the ordinary sense of the words used, their context, the purpose sought to be accomplished, Harding v. City of Dickinson, 76 N.D. [71], 33 N.W.2d 626, and other related laws and circumstances. Hoellinger v. Molzhon, [77 N.D. 108], 41 N.W.2d 217 [19 A.L.R.2d 1147].

Ophaug v. Hildre, 77 N.D. 221, 42 N.W. 2d 438, 440.

In construing a statute consideration must be given to the ordinary sense of the words used and the context in which used. The whole act and the purpose sought to be accomplished must be considered. The main object of interpretation is to ascertain and give effect to the intention of the legislature.

Harding v. City of Dickinson, 76 N.D. 71, 33 N.W.2d 626.

In determining the intention of the legislature courts will take into consideration the object sought to be accomplished by the law.

Issendorf v. State, 69 N.D. 56, 283 N.W. 783.

In applying these rules to the interpretation of the above statutes of the Unemployment Compensation Act we must consider the meaning of the word "service" found in each of the statutes. The word "service" is not defined in the Act, and it must be given its common meaning unless the context requires otherwise, which it does not.

Webster's New International Dictionary defines "service" as:

1. The occupation, condition, or status of a servant, * * *

2. Performance of labor for the benefit of another, or at another's command; attendance of an inferior, hired helper, slave, etc. * * *

 *       *       *       *       *       *

4. The deed of one who serves; labor performed for another; * * *

These definitions do not embrace the activities of work performed for one's self in

running one's own enterprise, but rather they refer to the relationship as being that of an employer and employee. The statutes also refer to the relationship as being that of an employer and employee. It is significant that in Section 52–01–01(12) "employee" is defined to mean "every individual, * * * who is performing, * * * services for an *employer* * * *", and that in Section 52–01–01(13) "employment" is defined to mean "[a]ny service * * * performed for wages or *under any contract of hire, written or oral, express or implied.*"

Section 52–01–01(21), supra, in defining "unemployed" speaks of an employer and employee relationship using the words *"services"* and *"wages"*, e. g., "An individual shall be deemed 'unemployed' with respect to any week during which he *performs no services and with respect to which no wages are payable.*"

Section 52–01–01(22), supra, defines "wages" as remuneration for *services* from whatever source. Under the definition of the statutes the words "service" and "wages" relate to an employer and employee relationship.

■ We are of the opinion that a person engaged in a farming enterprise for himself is not rendering services within the meaning of the statute and thus not "employed" within the disqualifying provisions of the Act barring him from benefits.

■ There is no provision in the Act precluding a person from benefits because he lives on, owns, or operates a farming enterprise as owner, landlord, tenant, or share-cropper, and in particular Section 52–06–02, N.D.C.C., in setting forth the conditions under which a person shall be disqualified for benefits, does not designate a farming enterprise as disqualifying a person from such benefits.

Furthermore, the long-continued practical construction of the Act by the Division does not preclude such person from benefits. Here the Division has granted unemployment compensation benefits to the petitioner in each of the previous years from 1952 up to the time of this claim for benefits, under the same situations as are present now.

"This court has repeatedly held that 'in construing a statute of doubtful meaning the court will give weight to the long-continued practical construction placed thereon by the officers charged with the duty of executing and applying the statute.' State v. Equitable Life Assurance Society, 68 N.D. 641, 673, 282 N.W. 411."

Payne v. Board of Trustees, 76 N.D. 278, 35 N.W.2d 553, 557.

The respondent contends that the petitioner was not continuously available for work, was not seeking work, and was not genuinely attached to the labor market because the farming enterprise prevented him from accepting work when work was available. However, we have reviewed the record and the evidence discloses that at all times and during the period of unemployment he was available and was seeking work outside of his farming enterprise; that the work he performed on the farm of caring for the cattle during the period of involuntary unemployment did not interfere with his attachment to the labor market, as his wife and children would care for the cattle upon his becoming re-employed. The evidence further shows that his family did practically all of the work of caring for the cattle and in the field work of cropping the land. At the most it can only be said that he helped with the farm work when he came home on occasional weekends and evenings. That he took off nine days from his employment is not indicative of an intent to leave the labor market to take up the business of farming, as he returned to his regular employment immediately thereafter and continued in such employment until the lay-off on account of wintry weather. The evidence shows that he had been employed by others since 1952, principally in seasonal construction work. The petitioner has with-

out doubt established a bona fide connection with the labor market and is available for work at all times.

The respondent urges in his brief that this matter having come before the district court for judicial review of an administrative agency's determination in accordance with the provisions of § 28–32–19, N.D.C.C., the determination of the agency should have been affirmed.

■ The Unemployment Compensation Division of the Workmen's Compensation Bureau is an administrative agency and cases against the Bureau (the respondent) are tried under the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C.

In discussing the procedure under the Administrative Agencies Practice Act this Court said in Gullickson v. North Dakota Workmen's Compensation Bureau, N.D., 83 N.W.2d 826, that the district court must review the evidence contained in the record, certified from the Bureau, to determine whether the findings of fact made by the Bureau are supported by the evidence and that its decision is in accordance with the law. And we further said:

Under the statutes providing for an appeal from the decisions of the Workmen's Compensation Bureau it was incumbent upon the trial court to review the evidence to ascertain and determine whether the findings of fact of the Compensation Bureau were or were not supported by the evidence; and if the court found that the findings were not supported by the evidence then it was incumbent upon the court to render decision accordingly and to require that the decision of the Bureau be modified or reversed as the justice of the cause might require.

In the present case the trial court reviewed the evidence contained in the record and upon ascertaining that the findings were not supported by the evidence rendered its decision reversing the decision of the Bureau (the respondent) and ordering judgment for the petitioner.

The district court, upon an appeal from the determination of an administrative agency, by the provisions of § 28–32–19, is directed to reverse or modify the decision of the agency if it finds, among other things, that the findings of fact made by the agency are not supported by the evidence. Northern Pacific Ry. Co. v. McDonald, 74 N.D. 416, 23 N.W.2d 49.

Section 28–32–19 provides:

The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. * * * After such hearing, the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules of procedure of the agency have not afforded the appellant a fair hearing, *or that the findings of fact made by the [decision of the] agency are not supported by its findings of fact.* If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court. [Emphasis supplied]

Under § 28–32–21, the judgment in the district court in an appeal from a decision of an administrative agency may be reviewed in the Supreme Court on appeal in the same manner as any case tried to the court without a jury can be reviewed, and § 28–27–32, so far as it is pertinent, reads as follows:

On appeal in any action tried by the court, without a jury, whether triable to a jury or not. * * * The supreme

court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, * * *.

 We have reviewed the record and we find that the evidence sustains the findings of fact of the trial court.

The record in this case shows that the petitioner has established a bona fide connection with the labor market and has performed services for an employer in an employment covered by the Unemployment Compensation Act for wages under a contract of hire, has become unemployed through no fault of his own, and has fully complied with the conditions set forth in § 52–06–01, supra, namely:

1. He has made a claim for benefits;

2. He has registered for work at, and thereafter continued to report to, an unemployment office;

3. He is able to work and is available for suitable work;

4. He has been unemployed for a waiting period of one week.

The respondent urges as error the award in the judgment by the trial court to the petitioner of reasonable attorney's fees, payable from the Unemployment Compensation Fund, and we think this assignment of error must be sustained.

Section 52–06–32, N.D.C.C., of the Unemployment Compensation Act provides:

No individual claiming benefits shall be charged fees of any kind in any proceeding under this chapter by the bureau, its representatives, or by any court or any officer thereof. Any individual claiming benefits in any proceeding before the bureau or its representatives or a court may be represented by counsel or other duly authorized agent, but no such counsel or agents shall either charge or receive for such services more than an amount approved by the bureau.

It appears that under the provisions of this section the attorney for the petitioner must apply to the respondent Workmen's Compensation Bureau to fix his fee which is chargeable to and payable by his client.

The petitioner has requested that this court award to him attorney's fees on this appeal payable from the Unemployment Compensation Fund. We must deny this request for the same reasons given for the denial of attorney's fees in the trial court. Here the petitioner must also request the respondent to fix the attorney's fees chargeable to and payable by his client.

The judgment of the trial court is modified as to the award for attorney's fees, and otherwise affirmed.

TEIGEN, C. J., and ERICKSTAD and STRUTZ, JJ., concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.